# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 88

**APRIL TERM, A.D. 2026**

**August 7, 2026**

RENE IRISROSE DANIELS,

Appellant
(Defendant),

v.                                                                    S-25-0045, S-25-0288

THE STATE OF WYOMING,

Appellee
(Plaintiff).

***Appeal from the District Court of Sweetwater County***
***The Honorable Richard L. Lavery, Judge***

*Representing Petitioner:*

Office of the State Public Defender: Patricia Bennett, Wyoming State Public Defender,* Kirk A. Morgan, Chief Appellate Counsel, Brittany Thorpe, Assistant Appellate Counsel. Argument by Ms. Thorpe.

*Representing Respondent:*

Keith G. Kautz, Attorney General, Jenny L. Craig, Deputy Attorney General, Kristen R. Jones, Senior Assistant Attorney General, Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*An order substituting Patricia L. Bennett for Brandon Booth was entered on April 15, 2026.

***Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ, and COOLEY, DJ.***

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**COOLEY, District Judge.**

[¶1]     Following her conviction for second-degree murder arising from the death of Emiliano "Chico" Morales III, Rene Irisrose Daniels filed a motion for a new trial pursuant to Rule 21 of the Wyoming Rules of Appellate Procedure (W.R.A.P.) alleging she received ineffective assistance of counsel at trial. The district court denied the motion without a hearing, concluding Ms. Daniels failed to establish either deficient performance or resulting prejudice. Ms. Daniels appeals, arguing the district court erred in denying her W.R.A.P. 21 motion for new trial. Because the record demonstrates substantial independent evidence supporting the jury's verdict, Ms. Daniels has failed to establish prejudice under *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674, 692 (1984), and this Court affirms the district court's order denying Ms. Daniels's W.R.A.P. 21 motion for a new trial.

## ISSUE

[¶2]     The dispositive issue is whether the district court erred in denying Ms. Daniels's W.R.A.P. 21 motion for new trial alleging ineffective assistance of counsel. Ms. Daniels advances four theories in support of that claim, including counsel's failure to seek suppression of her statements to law enforcement, the failure to object to the detective's interview questions, the failure to object to law enforcement video of the area, and finally, cumulative error.

## FACTS

[¶3]     This appeal arises from the district court's denial of Ms. Daniels's motion for new trial under W.R.A.P. 21. Because Ms. Daniels's claims require the Court to assess whether the outcome of her trial would likely have been different absent the challenged evidence, we begin with a summary of the events leading to the victim's injuries and eventual death, the investigation that followed, the evidence presented at trial, and the subsequent W.R.A.P. 21 proceedings.

### A.     The Events Leading to the Victim's Death

[¶4]     The Defendant, Ms. Daniels, and the victim, Mr. Morales, were involved in a years-long romantic relationship that had deteriorated in the weeks preceding Mr. Morales's death. On the evening of May 24, 2023, the pair met at a Kum & Go convenience store in Rock Springs, Wyoming, so that Ms. Daniels could return some of Mr. Morales's possessions to him. An argument ensued, eventually moving from the parking lot to the adjacent roadway and then to a gravel lot.

1

[¶5]    Ms. Daniels maintained that she was attempting to leave the area when Mr. Morales threw a motorcycle part through the rear window of her vehicle, a Tahoe SUV. According to Ms. Daniels, Mr. Morales then ran in front of her vehicle as she attempted to drive away, and she struck him unintentionally while trying to escape the confrontation. After running over Mr. Morales, Ms. Daniels assisted him into her vehicle and drove him to the hospital. Mr. Morales suffered fatal injuries resulting from the incident. Immediately following Mr. Morales's death, the State charged Ms. Daniels with one count of involuntary manslaughter, in violation of Wyoming Statute § 6-2-105(a)(ii) (2023). After further investigation, those charges were amended to include one count of murder in the second degree in violation of Wyoming Statute § 6-2-104 (2023) and one alternative count of involuntary manslaughter in violation of Wyoming Statute § 6-2-105(a)(ii). The charges were amended one additional time prior to trial to include one count of murder in the second degree in violation of Wyoming Statute § 6-2-104 and amending the alternative count to aggravated homicide by vehicle, in violation of Wyoming Statute § 6-2-106(b)(ii) (2023).

## B.    The Investigation

[¶6]    Law enforcement officers became involved after medical personnel treating Mr. Morales reported concerns regarding the circumstances of his injuries. Hospital staff testified that Ms. Daniels initially provided inconsistent explanations of how Mr. Morales had been injured and who was responsible. After Mr. Morales briefly regained consciousness in the trauma bay and identified Ms. Daniels as the person who struck him, hospital personnel contacted law enforcement. Officer Michelle Garrettson responded to the hospital and interviewed Ms. Daniels. During that interview, Ms. Daniels described the events leading to Mr. Morales's injuries and maintained that Mr. Morales threw a motorcycle part through her back windshield and then quickly ran in front of her vehicle as she attempted to leave the area.

[¶7]    Detective Matthew Jones later continued the investigation, interviewing witnesses, documenting the scene, collecting physical evidence, and obtaining surveillance footage from the nearby Kum & Go. Detective Jones also conducted a subsequent recorded interview with Ms. Daniels. As part of the investigation, officers also documented the location where Mr. Morales was struck, the path traveled by Ms. Daniels's vehicle, and other physical evidence bearing on the circumstances of the incident.

[¶8]    The investigation ultimately yielded multiple forms of evidence, including Ms. Daniels's statements to law enforcement, Mr. Morales's statement to medical personnel, surveillance footage, witness observations, physical evidence from the scene, accident reconstruction analysis, recorded jail telephone calls, and communications between Ms. Daniels, Mr. Morales, and others in the weeks preceding the incident.

## C.     The Trial

[¶9]     The matter proceeded to a four-day jury trial beginning June 17, 2024. Consistent with her earlier statements to law enforcement, Ms. Daniels maintained that Mr. Morales ran in front of her vehicle as she attempted to leave the area and that she did not intentionally strike him. The State contended the evidence demonstrated Ms. Daniels deliberately drove towards Mr. Morales and struck him after an escalating confrontation. A central dispute at trial concerned where and how the vehicle impact occurred. Ms. Daniels maintained the collision occurred as Mr. Morales ran into her path of travel, while the State relied upon physical evidence, witness testimony, and accident reconstruction testimony to establish that Ms. Daniels drove from the roadway into the adjacent gravel lot before striking Mr. Morales.

[¶10]   The State presented testimony from law enforcement officers, medical personnel, eyewitnesses, forensic experts, and accident reconstruction expert Ken Davis. Hospital personnel testified regarding Ms. Daniels's statements upon arriving at the emergency room, Mr. Morales's condition upon arrival, and Mr. Morales's identification of Ms. Daniels as the person who struck him. Law enforcement officers testified regarding their investigation, witness interviews, the collection of physical evidence, and Ms. Daniels's statements during recorded interviews conducted first at the hospital and later during the on-going investigation.

[¶11] Several witnesses testified regarding the events immediately preceding and following the incident, although no witness testified to seeing Ms. Daniels hit Mr. Morales. Witnesses described Ms. Daniels and Mr. Morales arguing outside the Kum & Go convenience store and observed portions of the confrontation before Mr. Morales was struck. One witness testified she observed dirt in the air coming from the gravel lot and then saw Mr. Morales lying on the ground. The same witness testified that she then heard Ms. Daniels tell Mr. Morales to "[g]et up, motherfucker."

[¶12] The jury also viewed surveillance footage obtained from the Kum & Go. This footage depicted Ms. Daniels's and Mr. Morales's initial interactions, showed Mr. Morales walking away from Ms. Daniels, and then showed Ms. Daniels in her vehicle turning out of the Kum & Go parking lot in the same direction Mr. Morales was seen heading on foot.

[¶13] A significant portion of the State's case included photographs of, and physical evidence recovered from the scene. Through the testimony of accident reconstruction expert Ken Davis, an officer with the Rock Springs Police Department, the State presented evidence illustrating the path Ms. Daniels's vehicle traveled, the location where Mr. Morales was struck, and the physical characteristics of the area. Officer Davis testified that based upon his examination of the scene and the physical evidence, Ms. Daniels's vehicle left the roadway, traversed the curb into the adjacent gravel lot,

3

traveled in Mr. Morales's direction at speeds between ten to fifteen miles per hour, striking him without evidence of braking before impact or until the vehicle had cleared his body.

[¶14] In addition to Officer Davis's accident reconstruction testimony, the State also introduced Exhibit 3 on rebuttal, a video created by law enforcement the day after the incident. The State offered this video to depict the route a vehicle had to take from the roadway where the shattered glass from Ms. Daniels's back window was located into the gravel lot where Morales was eventually struck. Testimony provided on both direct and cross-examination explained it was not an actual depiction of the event, just the route a vehicle must take from the roadway into the gravel lot, and clearly indicated various differences between it and the actual incident, including differences in the type of vehicle used, the speed at which it was driven, the size of the individual standing in the lot to illustrate where Mr. Morales was standing, and the movements of that individual.

[¶15] The State also introduced evidence concerning Ms. Daniels's relationship with Mr. Morales in the weeks preceding the incident. That evidence included text messages and other communications documenting increasing hostility between them, as well as Ms. Daniels's hostility toward Mr. Morales's new girlfriend. The jury further heard recordings of telephone calls Ms. Daniels made while incarcerated in which she discussed the events leading to Mr. Morales's death, providing her account of what transpired.

[¶16] The jury additionally heard recordings of Ms. Daniels's interviews with law enforcement, including interviews conducted by Officer Garrettson and Detective Jones. Throughout those interviews, Ms. Daniels consistently maintained that she did not intentionally strike Mr. Morales and that the incident occurred when Mr. Morales moved into the path of her vehicle as she attempted to leave the area.

[¶17] Ms. Daniels testified in her own defense. She maintained that Mr. Morales ran in front of her vehicle as she attempted to leave the area and denied intentionally striking him. Although Ms. Daniels continued to characterize the incident as accidental, portions of her trial testimony differed from statements she previously provided during recorded interviews with law enforcement and from other evidence introduced at trial.

[¶18] Following deliberations, the jury found Ms. Daniels guilty of second-degree murder and aggravated vehicular homicide. Prior to sentencing the State dismissed the alternative count of aggravated vehicular homicide. The district court thereafter sentenced Ms. Daniels to serve a term of forty-five years to life in prison.

**D.     W.R.A.P. 21 Proceedings**

[¶19]  After sentencing, Ms. Daniels pursued a direct appeal. While that appeal was pending, Ms. Daniels filed a motion for new trial pursuant to W.R.A.P. 21 alleging she received ineffective assistance of counsel. Specifically, Ms. Daniels asserted trial counsel was ineffective for failing to: (1) seek suppression of statements she made to law enforcement; (2) object to portions of Detective Jones's recorded interview; (3) object to the law enforcement video of the area; and (4) based on the cumulative effect of counsel's alleged errors. Following response from the State opposing the request for a new trial, the district court entered a written order denying the motion. The district court concluded Ms. Daniels failed to establish prejudice arising from any alleged deficiency in counsel's performance. Ms. Daniels timely appealed.

## DISCUSSION

### A. Standard of Review

[¶20]  A criminal defendant has the right to the effective assistance of counsel. U.S. Const. amend. VI; Wyo. Const. art. 1, § 10; *Strickland*, 466 U.S. at 686 ("[T]he right to counsel is the right to the effective assistance of counsel." (quotations omitted)). To prevail on a claim of ineffective assistance of counsel, a defendant must establish both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Steplock v. State*, 2022 WY 12, ¶ 20, 502 P.3d 930, 936–37 (Wyo. 2022) (quoting *Neidlinger v. State*, 2021 WY 39, ¶ 53, 482 P.3d 337, 351–52 (Wyo. 2021)). Counsel's performance is deficient when counsel fails to render the assistance that would be provided by a reasonably competent attorney under prevailing professional norms. *Id*. Prejudice exists when there is a reasonable probability that, absent counsel's deficient performance, the outcome of the proceeding would have been different. *Id*. A defendant's failure to establish either prong is fatal to a claim of ineffective assistance of counsel. *Id*.

[¶21]  A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant. *Strickland*, 466 U.S. at 697. If it is easier to dispose of an ineffective assistance claim on the grounds of lack of sufficient prejudice, that course should be followed—as it is here, where prejudice is dispositive of Ms. Daniels's claims and the analysis begins and ends there. *Id*.; *Leners v. State*, 2021 WY 67, ¶ 21, 486 P.3d 1013, 1018 (Wyo. 2021). The object of an ineffectiveness claim is not to grade counsel's performance, but rather to determine whether counsel's alleged deficiencies undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 697. "[T]he paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance." *Schreibvogel v. State*, 2010 WY 45, ¶ 47, 228 P.3d 874, 889 (Wyo. 2010) (citations and quotations omitted).

[¶22] Claims of ineffective assistance of counsel present mixed questions of law and fact. *Griggs v. State*, 2016 WY 16, ¶ 37, 367 P.3d 1108, 1124 (Wyo. 2016). This Court will generally defer to the district court's factual findings unless they are clearly erroneous, but review de novo the district court's legal conclusions, including whether counsel's performance was deficient and whether a defendant suffered prejudice as a result. *Steplock*, 2022 WY 12, ¶ 20, 502 P.3d at 936–37. That deference, however, presupposes factual findings to defer to. An evidentiary hearing—and the factual findings it produces—is required only where the allegations of ineffectiveness are so fact-dependent that they cannot be assessed on the existing record; that is, where a defendant's "serious and specific allegations" of deficiency and prejudice require development of facts outside the record to be meaningfully evaluated. *Rutti v. State*, 2004 WY 133, ¶ 27, 100 P.3d 394, 407 (Wyo. 2004) (citing *Calene v. State*, 846 P.2d 679, 687, 693 (Wyo. 1993)).

[¶23] That is not the case here. Each of Ms. Daniels's four claimed deficiencies—the failure to seek suppression of her statements to law enforcement, the failure to object to the detective's eyewitness interview questions, the failure to object to the law enforcement video, and finally cumulative error—turn entirely on conduct and evidence that occurred on the record and are fully documented in the trial transcript and exhibits. The district court did not need further factual development to evaluate, on the existing record, whether trial counsel's identified acts or omissions were outside the wide range of professionally competent assistance and whether Ms. Daniels was prejudiced as a result. Because the district court resolved the ineffectiveness claims without an evidentiary hearing, there are no trial-court factual findings to which this Court must defer. Instead, the Court reviews the existing record de novo to determine whether trial counsel's identified acts or omissions fell outside the wide range of professionally competent assistance and, if so, whether that deficiency prejudiced the defendant. *Reyna v. State*, 2001 WY 105, ¶ 19, 33 P.3d 1129, 1134–35 (Wyo. 2001); *Frias v. State*, 722 P.2d 135, 145 (Wyo. 1986). In conducting our review, we invoke a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Schreibvogel*, 2010 WY 45, ¶ 47, 228 P.3d at 889.

[¶24] As explained below, prejudice is dispositive of Ms. Daniels's claims, and we begin and end our analysis there.

## B.  Analysis

### I.  Did Ms. Daniels establish prejudice under *Strickland* arising from trial counsel's performance*?*

[¶25] Ms. Daniels's W.R.A.P. 21 motion alleged trial counsel was ineffective for failing to: (1) seek suppression of statements she made to law enforcement after she was in custody and before receiving Miranda warnings, and that she further cursorily contends

6

were involuntary; (2) object to "double hearsay" statements made by Detective Jones to Ms. Daniels concerning non-existent eyewitness accounts; and (3) object to admission of a law enforcement video. She further argued that the cumulative effect of those alleged errors deprived her of a fair trial. The district court denied the motion, concluding that regardless of whether counsel's performance was deficient, Ms. Daniels failed to demonstrate prejudice.

[¶26]  On appeal, Ms. Daniels argues the district court erred in concluding she could not establish prejudice. She contends intent was the central issue at trial and that the challenged evidence played a significant role in the State's effort to prove she acted purposely and maliciously rather than accidentally or recklessly. According to Ms. Daniels, her statements to law enforcement were repeatedly used by the State to demonstrate consciousness of guilt and to highlight inconsistencies in her account of the incident, while the alleged double hearsay statements and law enforcement video further bolstered the State's theory of the case. Ms. Daniels therefore maintains there is a reasonable probability the jury would have reached a different verdict had counsel successfully excluded that evidence.

[¶27]  The State responds that Ms. Daniels overstates the significance of the challenged evidence and understates the strength of the remaining evidence presented to the jury. The State contends that even if the challenged evidence had been excluded, the jury still would have heard evidence concerning Ms. Daniels's deteriorating relationship with Mr. Morales, witness observations immediately preceding and following the vehicle impact, Ms. Daniels's own admissible statements both to law enforcement and at trial, and extensive physical evidence concerning the path of her vehicle and the circumstances of the incident. Accordingly, the State maintains the district court appropriately denied the motion for new trial because Ms. Daniels cannot establish prejudice under *Strickland*, *supra*. The following analysis considers the evidence presented at trial for each of Ms. Daniels's claims, finding no prejudice as a result of counsel's acts or omissions, for which we provide no independent analysis or determination.

a.     **Ms. Daniels did not establish prejudice arising from trial counsel's failure to seek suppression of statements she made to law enforcement.**

[¶28]  Ms. Daniels raises two theories supporting suppression of her statements to law enforcement. She contends statements made after Officer Garrettson informed her she was not free to leave should have been suppressed because they were obtained without *Miranda* warnings. Without separate analysis, she further contends her later statements to Detective Jones during a second interview were involuntary. Ms. Daniels advances separate legal theories under which counsel should have sought suppression of her statements. Because both claims ultimately concern the same evidence and the same alleged prejudice, we will address them together.

7

[¶29] Ms. Daniels devotes considerable attention to whether statements she made after Officer Garrettson informed her she was not free to leave and her subsequent statements to Detective Jones would have been suppressed under *Miranda* and the principles discussed in *Oregon v. Elstad*, 470 U.S. 298 (1985), and *Missouri v. Seibert*, 542 U.S. 600 (2004). The district court did not resolve those questions, nor will this Court. Because Ms. Daniels cannot establish prejudice, we need not decide whether trial counsel's objection to the challenged statements would have resulted in suppression.

[¶30] As the district court recognized, "[w]hen a claim of ineffectiveness rests on counsel's failure to raise an issue in a motion to suppress evidence, prejudice will result where, in the absence of that evidence, only a limited amount of evidence was available to the prosecution to support a conviction." *Mills v. State*, 2020 WY 14, ¶ 20, 458 P.3d 1, 9 (Wyo. 2020) (quoting *Lancaster v. State*, 2002 WY 45, ¶ 59, 43 P.3d 80, 102 (Wyo. 2002)) (internal quotation marks omitted). Ultimately, however, the inquiry remains whether there exists a reasonable probability that, but for counsel's failure to seek suppression, the outcome of the trial would have been different. *Id.* ¶ 30, 458 P.3d at 12; *Strickland*, 466 U.S. at 694. Even assuming, without deciding, that counsel could have successfully suppressed all statements Ms. Daniels challenges on appeal, the record shows that substantial evidence remains to support her conviction, and she cannot show a reasonable probability of a different verdict.

[¶31] At the outset it is important to recognize that Ms. Daniels does not challenge the initial portion of her interaction with Officer Garrettson.[1] As the district court observed, and Ms. Daniels acknowledged in her W.R.A.P. 21 motion, many of the statements she now contends should have been suppressed were substantially similar to statements she had already made to Officer Garretson before the officer informed her she was not free to leave. Thus, even if Ms. Daniels is correct that she would have prevailed on a motion to suppress her subsequent statements to law enforcement, the jury still would have heard a substantially similar account and explanation of the events leading to Mr. Morales's death through Officer Garretson's recitation of her statements during the first twenty-five minutes of the interview.

[¶32] Nor were Ms. Daniels's statements to law enforcement the only source of her account of the events surrounding Mr. Morales's death. The jury heard several recorded telephone calls Ms. Daniels made while incarcerated in which she discussed the incident and described the events leading to his death. Accordingly, even if Ms. Daniels's

---

[1] Throughout her brief, Ms. Daniels recognizes that the first twenty-five minutes of her interview with Officer Garretson were non-custodial. Because her argument focuses on the statements made following that point in time and later to Detective Jones, the Court finds that Ms. Daniels implicitly concedes, and the Court agrees, that the first twenty-five minutes of her interview with Officer Garretson were admissible.

challenged statements had been suppressed, the jury would nevertheless have heard her description of the incident through other properly admitted evidence.

[¶33] The jury also reviewed surveillance footage from the Kum & Go showing Mr. Morales walking away from Ms. Daniels before the collision and Ms. Daniels following in the same direction in her vehicle shortly after. Physical evidence established that Mr. Morales was not struck in the roadway instead demonstrating that Ms. Daniels's vehicle traversed a curb before entering the gravel lot. From this evidence, the jury could reasonably infer that Ms. Daniels did not simply encounter Morales in her path of travel but instead followed him into the gravel lot where he was ultimately struck.

[¶34] The State also presented extensive accident reconstruction evidence concerning the path of Ms. Daniels's vehicle and the circumstances under which she struck Mr. Morales. That evidence showed he was struck approximately fifty feet beyond the curb and sidewalk after Ms. Daniels's vehicle left the roadway and entered the adjacent gravel lot.  The reconstructionist testified Ms. Daniels's vehicle did not travel in a straight path through the lot but instead turned toward the right in Morales's direction. He further testified he observed no physical evidence indicating Ms. Daniels braked or otherwise slowed before impact. He explained that braking or changes in acceleration on a loose gravel surface would have produced observable disturbances in the gravel, yet none were present.  From this evidence, the jury could independently evaluate Ms. Daniels's path of travel, the location of the impact, and Ms. Daniels's failure to brake. Regardless of the statements being challenged, substantial physical evidence provided more than a sufficient basis from which the jury could determine that Ms. Daniels acted purposely, recklessly, or accidentally.

[¶35] Additional eyewitness testimony established that, after striking Mr. Morales, Ms. Daniels exited her vehicle and told him to "[g]et up, motherfucker." The jury also viewed numerous text messages documenting the deteriorating relationship between Ms. Daniels and Mr. Morales and Ms. Daniels's escalating hostility toward Mr. Morales and his new girlfriend in the days and weeks preceding the collision. The surveillance footage, eyewitness testimony, and extensive physical and accident reconstruction evidence of the event provided the jury with substantial insight into Ms. Daniels's intent and state of mind independent of any challenged statements made during her interviews with law enforcement.

[¶36] Viewed collectively, the State's remaining evidence provided the jury with far more than "a limited amount of evidence" upon which it could rely to determine that Ms. Daniels acted purposely and maliciously. *Mills*, 2020 WY 14, ¶ 20, 458 P.3d at 9. Indeed, the jury would have heard Ms. Daniels's admissible twenty-five minute account of the incident she initially relayed to Officer Garretson at the hospital, it would have viewed the surveillance footage showing her traveling in Mr. Morales's direction after he walked away, eyewitness testimony from both before and immediately after the event,

9

extensive physical and accident reconstruction evidence, and evidence bearing on her motive and state of mind. Accordingly, even assuming the challenged statements she made to law enforcement had been suppressed, Ms. Daniels has failed to establish a reasonable probability that the outcome of her trial would have been different.

**b.     Ms. Daniels did not establish prejudice arising from trial counsel's failure to object to Detective Jones's challenged interview questions of non-existent witnesses.**

[¶37] Ms. Daniels next contends trial counsel was ineffective for failing to object to portions of Detective Jones's recorded interview in which he represented to her that several witnesses observed her drive into the gravel lot and strike Morales. According to Ms. Daniels, Detective Jones's statements constituted inadmissible double hearsay and violated her rights under the Confrontation Clause because the State did not identify or produce the purported witnesses at trial. She maintains the statements supplied critical facts not otherwise supported by the evidence which improperly undermined her account of the events.

[¶38] The district court rejected Ms. Daniels's claim, concluding she failed to demonstrate that any effort by trial counsel to exclude this portion of her interview with the Detective would have been successful. *See Rolle v. State*, 2010 WY 100, ¶ 42, 236 P.3d 259, 276 (Wyo. 2010) (abrogated on other grounds by *Johnson v. State*, 2015 WY 118, 356 P.3d 767 (Wyo. 2015)); *Schreibvogel*, 2010 WY 45, ¶ 48, 228 P.3d at 890 (rejecting an ineffective assistance claim where the defendant failed to establish that any objection would have been sustained). Again, however, even assuming counsel should have objected and the objection would have been sustained, Ms. Daniels cannot establish a reasonable probability that exclusion of the challenged interview excerpt would have altered the outcome of her trial.

[¶39] Ms. Daniels characterizes Detective Jones's questions as inadmissible double hearsay establishing that multiple eyewitnesses observed her drive into the gravel lot and strike Mr. Morales. The record, however, reflects no such evidence or use of this alleged evidence. No witness testified to observing the collision itself, and the State repeatedly acknowledged as much, which acknowledgement was reiterated by the defense. As the district court noted in its denial of Ms. Daniels's W.R.A.P. 21 motion, the challenged exchange was instead an interview technique to determine whether Ms. Daniels's story might change if she believed others saw the event. The jury was never provided with substantive eyewitness testimony establishing how the event occurred, nor does the record support Ms. Daniels's suggestion that the jury was left with the impression that unidentified eyewitnesses observed the incident. In fact, during closing argument, defense counsel expressly told the jury "I wasn't there, the State wasn't there, you weren't there. Nobody saw what happened…" and "[n]obody saw it, wasn't on video, we don't know. We just don't know." The State followed defense counsel's lead and in

10

rebuttal closing, expressly noted that there were only two people who witnessed the impact, Ms. Daniels and Mr. Morales, only one of whom was alive to testify.

[¶40] Against this backdrop, the challenged exchange was more likely to reinforce Ms. Daniels's version of events than it was to undermine it. Faced with Detective Jones's suggestion that witnesses observed a different sequence of events than she initially reported, Ms. Daniels continued to reject that account, adhering to her own description of the events. Moreover, as discussed above, the jury heard substantial independent evidence concerning Ms. Daniels's conduct, the physical evidence showing that Ms. Daniels pursued Mr. Morales, struck him without braking, and Ms. Daniels's state of mind. Thus, even assuming counsel could have successfully objected to the challenged portion of the interview, Ms. Daniels has not demonstrated a reasonable probability that exclusion of the exchange would have altered the outcome of the trial.

**c.      Ms. Daniels did not establish prejudice arising from trial counsel's failure to object to the admission of the law enforcement video.**

[¶41] In her final specific contention, Ms. Daniels argues that State's Exhibit 3, a video put together by law enforcement officers, unfairly suggested that she deliberately drove into the gravel lot and struck Morales when it depicted a smaller vehicle slowly maneuvering around a much larger, stationary individual standing in the lot, before exiting the same way the vehicle came in. The district court rejected that characterization, concluding the exhibit had limited probative value and was intended only to depict the physical layout of the scene and the route a vehicle had to take to get from the roadway into the gravel lot, but did not purport to recreate the event itself. The record likewise reflects a much narrower use of the exhibit. The jury was expressly informed that the vehicle depicted was smaller in size than Ms. Daniels's vehicle, that the individual standing in the lot did not resemble Mr. Morales in size, and that the speeds shown in the video differed substantially from those estimated by the State's crash reconstruction expert.

[¶42] Nor did the State rely upon Exhibit 3 as a reconstruction of the collision itself. During closing argument, the State referenced the exhibit only in discussing the physical route from the roadway into the gravel lot. The State's argument concerning Ms. Daniels's intent instead relied upon the testimony of its crash reconstruction expert and the physical evidence at the scene, including Ms. Daniels's path of travel, the curb traversal, the absence of braking, and the location where Mr. Morales was struck. Defense counsel likewise highlighted the limitations of Exhibit 3 during closing argument, describing the video as "…far from reality." Thus, the very shortcomings Ms. Daniels now identifies on appeal were disclosed to the jury and highlighted by both parties.

11

[¶43]  More importantly, Ms. Daniels has not demonstrated that Exhibit 3 provided the jury with any material fact that was not established through other evidence. The jury heard substantial independent evidence concerning Ms. Daniels's path of travel, the location of the event, the physical layout of the scene, and Ms. Daniels's state of mind. Accordingly, even assuming counsel could have successfully objected to Exhibit 3, Ms. Daniels has not demonstrated a reasonable probability that exclusion of the exhibit would have altered the outcome of the trial.

**d.      Ms. Daniels did not show that any cumulative effect of counsel's alleged errors deprived her of a fair trial.**

[¶44]  Finally, Ms. Daniels contends that even if no individual act or omission by counsel constituted ineffective assistance, the cumulative effect of counsel's alleged errors deprived her of a fair trial. Specifically, she argues that, had her challenged statements been suppressed, Detective Jones's interview questions excluded, and Exhibit 3 excluded, there is a reasonable probability the jury would have evaluated her intent differently, changing the outcome of the trial.

[¶45]  We are not persuaded. As discussed above, Ms. Daniels has failed to establish prejudice arising from any individual claim. More importantly, even when considered collectively, the challenged evidence does not undermine confidence in the verdict. This is not a case where, absent the challenged evidence, only a limited amount of evidence remained available to support conviction. *See Dickeson v. State*, 843 P.2d 606, 612 (Wyo. 1992). Nor is it a case in which highly prejudicial evidence was admitted such that confidence in the jury's verdict depends upon the challenged evidence. *See Proffit v. State*, 2008 WY 114, ¶¶ 33-35, 193 P.3d 228, 241–42 (Wyo. 2008).

[¶46]  Even assuming all challenged evidence had been excluded, the jury still would have heard Ms. Daniels's twenty-five minute initial account of the incident to Officer Garretson, it would have viewed surveillance footage showing Morales walking away and Ms. Daniels following in her vehicle, it would have heard eyewitness testimony from before and immediately after Mr. Morales was struck, it would have heard of extensive physical and accident reconstruction evidence, and it would have viewed numerous text messages and telephone recordings bearing on Ms. Daniels's motive and state of mind. From that substantial evidence, the jury could reasonably conclude that Ms. Daniels acted purposely and maliciously. Accordingly, Ms. Daniels has failed to establish that the cumulative effect of the above alleged errors denied her a fair trial.

## CONCLUSION

[¶47]  Ms. Daniels's ineffective assistance of counsel claims ultimately fail for the same reason. Even assuming counsel should have sought suppression of portions of Ms. Daniels's statements, objected to Detective Jones's interview questions about alleged

eyewitnesses, or objected to Exhibit 3, Ms. Daniels has not demonstrated a reasonable probability that the outcome of her trial would have been different had he done so. Independent of the challenged evidence, the jury heard substantial evidence concerning Ms. Daniels's conduct, the physical circumstances of the incident, and her state of mind. Because Ms. Daniels has failed to establish prejudice under *Strickland*, either individually or cumulatively, we affirm the district court's order denying her W.R.A.P. 21 motion for new trial.